UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Timothy Edwin Rakes,<br><br>                Plaintiff,<br><br>vs.<br><br>Kilolo Kijakazi,[1] Acting Commissioner of Social Security,<br><br>                Defendant. | Civil Action No. 5:21-00666-KDW<br><br><br><br>ORDER |

Plaintiff Timothy Edwin Rakes ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). This action is proceeding before the undersigned Magistrate Judge by the parties' consent pursuant to 28 U.S.C. § 636 and Local Civil Rule 83.VII.02 (D.S.C.). For the following reasons, the Commissioner's decision is affirmed.

I.    Relevant Background

    A.    Procedural History

Plaintiff applied for DIB and SSI in December 2018 and March 2019, respectively. Tr. 169–79. Plaintiff's applications were denied initially and on reconsideration. Tr. 68, 95, 98, 108–15. At Plaintiff's request, Tr. 116, on April 30, 2020 an Administrative Law Judge ("ALJ") conducted a hearing, at which the ALJ heard from Plaintiff and an impartial vocational expert ("VE"), Tr. 31–59. The ALJ issued a decision finding Plaintiff not disabled on May 13, 2020. Tr. 12–25. Plaintiff requested review of this decision from the Appeals Council. Tr. 163-65. The

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Andrew Saul as the defendant in this action.

Appeals Council denied Plaintiff's request for review, Tr. 1–6, making the ALJ's May 2020 decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed March 8, 2021. ECF No. 1.

    B.    Plaintiff's Background

Plaintiff was born in July 1972 and was 45 years old as of his alleged onset date of December 15, 2017. Tr. 192. In his December 7, 2018 form Disability Report-Adult, Plaintiff indicated that he completed the 11th grade, did not attend special education classes, and had completed specialized training in 1991 in welding I and II. Tr. 196. At the administrative hearing Plaintiff testified that he received his GED. Tr. 38. Plaintiff listed his past relevant work ("PRW") as blender at GE (1987-1994), warehouse clerk (1994-1998), residential lawn care (2009-2010), and textile shipper (1998-2008, 2010-Dec. 15, 2017). Tr. 196. He alleged he stopped working on December 15, 2017, due to epidermolysis bullosa, depression, fatigue, and heart and lung issues. Tr. 195. Plaintiff indicated that he was 5'10" tall, weighed 195 pounds, and his conditions caused him pain or other symptoms. *Id.*

In an April 4, 2019 Disability Report-Appeal Plaintiff indicated changes in his medical conditions that occurred in September 2018. Tr. 204. Plaintiff described having fatigue and lack of energy, and he noted a new condition of "anxiety/depression" that was worse due to the inability to cope with his physical health. *Id.* Plaintiff noted that his daily activities had changed and that household tasks took four times as long to complete due to lack of breath. Tr. 211. He noted that he has to take breaks every 15-20 minutes. *Id.*

    C.    Administrative Proceedings

Plaintiff's administrative hearing was held on April 30, 2020 before ALJ J. Petri under Covid-19 telephonic hearing procedures. Tr. 33. Plaintiff appeared with counsel and testified; VE Janette Clifford also appeared and testified. *Id.* After exhibits were received into the record and Plaintiff's counsel made a brief opening statement Plaintiff was sworn in. Tr. 36-38.

1.  Plaintiff's Testimony

Plaintiff testified he lived alone and did not have a drivers license. Tr. 39–40. He stated he last worked as a clerk in a convenience store but was let go in February 2017 for missing too many shifts due to illness. Tr. 40. Plaintiff's recent jobs involved standing for long periods and lots of lifting. Tr. 43–45. Plaintiff stated he quit smoking about one month prior to the hearing but could not tell much difference in his breathing. Tr. 45. He stated he could no longer work because of chronic fatigue, lack of oxygen, his mental health, depression, chronic anxiety, social anxiety, and because he is constantly sick. Tr. 46. Plaintiff said he had to stay in bed at least once or twice a week due to fatigue from basic housework. Tr. 46.

Plaintiff indicated he had not driven since March of 2017, and he relied on his father for transportation. Tr. 47. He stated he did his own grocery shopping but had to do it "as quickly as possible" because going through the store and pushing a buggy "wears [him] out." Tr. 47. Plaintiff stated that he would have to rest when he got home before unloading and putting away the groceries. *Id.* He stated he could bathe himself but bathing and putting his clothes on made him physically exhausted and he would have to rest for up to 30 minutes afterward. Tr. 47–48. Plaintiff testified he did housework, including sweeping, mopping, washing dishes, and laundry, and he took care of his pets, but that it was exhausting. Tr. 48. He stated it could take him up to two hours to sweep and mop because he had to take frequent breaks. Tr. 48. Plaintiff testified that even at rest his breathing was not much different than if he had exerted himself for 15 or 20 minutes, his

3

chest hurt, and he was very fatigued. Tr. 48. Plaintiff testified he did some yardwork. He stated he did very little mowing and using a weed-eater because it wore him out and that his father helped with that. Tr. 49. He stated putting ant killer in the backyard and some screws in his steps took him four-and-a-half hours because he had to rest frequently. Tr. 48–49.

Plaintiff testified he could walk for six or seven minutes before needing a break. Tr. 49. He stated he could stand still, but not for extended periods of time because his legs would start to ache. Tr. 49–50. He stated he could sit, but was still fatigued when sitting, and that he could comfortably lift 15 or 20 pounds. Tr. 50.

Plaintiff testified he also had epidermolysis bullosa, which he described as a genetic disorder that caused blisters to form on his skin. Tr. 50. He stated friction, heat, walking, and using his hands would cause the blisters to form. Tr. 50–51. He testified the blisters occasionally popped and he experienced breakouts on his hands and feet during the summer. Tr. 51.

Plaintiff testified he experienced two to three anxiety attacks per week. Tr. 51. During these attacks, he would get shaky and nervous, sometimes vomit, and have trouble concentrating. Tr. 51. Concerning his respiratory problems, Plaintiff testified he had to fight to keep his breath up and constantly breathed like he had just gone for a walk or a jog. Tr. 51–52. He stated he recently began experiencing chest pains and was told the pain was caused by his lungs and the muscles around them working overtime to pump air into his body. Tr. 52.

    2.  VE's Testimony

The VE classified Plaintiff's past relevant work ("PRW") as: cashier II, Dictionary of Occupational Titles ("DOT") No. 211.462-010, light, SVP 2; driller, DOT No. 809.684-018, medium, SVP 2; material handler, DOT No. 929.687-030, heavy and possibly very heavy as performed by Plaintiff, SVP 3; groundskeeper, DOT No. 406.684-014, medium, SVP 3; collector,

DOT No. 241.367-010, light, SVP 4; and chemical mixer, DOT No. 559.665-026, medium, SVP 4. Tr. 54.

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past work with the following limitations:

> Hypothetical #1 is sedentary work except this hypothetical individual could frequently operate hand or foot controls, he could never climb ladders, ropes or scaffolds, could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl. He could have frequent exposure to extreme heat or pulmonary irritants or workplace hazards.

Tr. 55. The VE concurred with the ALJ that the hypothetical individual would be precluded from Plaintiff's PRW. *Id.* However, that hypothetical individual could perform work as an inspector, DOT No. 669.687-014, sedentary, SVP 2, with 106,120 available jobs; an order clerk, DOT No. 209.567-014, sedentary, SVP 2, with 116,290 available jobs; or a final assembler, DOT No. 713.687-018, sedentary, SVP 2, with 100,850 available jobs. Tr. 55.

The VE testified the same individual would be precluded from work if he was off task 15% or more of a workday in addition to regularly scheduled breaks. Tr. 55–56. The VE stated that her testimony was not inconsistent with the DOT or companion publications, but that she addressed specific issues, such as off-task work and hand/foot controls, on her 29 years of professional experience in the field of industrial rehabilitation as well as information from the Department of Labor. Tr. 56-57.

Plaintiff's counsel asked the VE how her answer would be affected if the individual in the first hypothetical consistently missed two days of work per month. Tr. 57. The VE testified that would not be consistent with competitive employment. *Id.*

With no further questions, the hearing concluded. Tr. 58.

5

II. Discussion

    A.    The ALJ's Findings

In her May 13, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since December 15, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: emphysema and epidermolysis bullosa (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He is further limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; but never climbing of ladders, ropes, or scaffolds. He is able to frequently operate hand and foot controls. He is able to have frequent exposure to extreme heat, pulmonary irritants, and workplace hazards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 21, 1972 and was 45 years old, which is defined as a younger individual age 45–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

      8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

      9.      Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

      10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

      11.      The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 18–20, 23, 24.

    B.    Legal Framework

      1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing

7

considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary

9

sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

Plaintiff alleges the ALJ failed to properly consider the longitudinal record in assessing limitations caused by his respiratory problems.[3] Pl.'s Br. 3, ECF No. 15. Specifically, Plaintiff contends the ALJ was dismissive of his hearing testimony, cherry-picked facts from the record to support her findings, and failed to consider the extent to which Plaintiff could perform his activities of daily living ("ADLs"). Pl.'s Br. 6–11. The Commissioner contends the ALJ's decision is supported by substantial evidence. Def.'s Br. 7, ECF No. 16.

At its core, Plaintiff's argument challenges the ALJ's consideration of his subjective complaints. SSR 16-3p provides a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Then the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or

---

[3] Plaintiff also asserts the "ALJ failed to mention that Plaintiff met the old Listing, 3.02C2." Pl.'s Br. 3. However, Plaintiff offers no argument in support of this claim in either his initial brief or response and has thus abandoned the issue. *See Shinaberry v. Saul*, 952 F.3d 113, 124 (4th Cir. 2020). Furthermore, the ALJ addressed the current Listing 3.02 (chronic respiratory disorders) in her decision and determined Plaintiff did not satisfy the Listing's requirements. Tr. 19.

her ability to perform work-related activities . . . ." *Id.* at *4. "In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ] examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, the ALJ expressly considered Plaintiff's complaints and reported symptoms, including "difficulty with lifting, standing, walking, stair climbing, memory, completing tasks, concentration, and using hands," and those identified in his hearing testimony of "chronic fatigue, lack of oxygen, mental health issues, and constant sickness." Tr. 20–21. The ALJ noted that "[d]espite these allegations, the claimant reported that he is able to care for his pets, perform personal care, prepare his own meals, perform household chores, go out alone, shop in stores, handle his finances, and perform hobbies such as watching television and fishing (Ex. 5E/1 and Testimony)." Tr. 21. The ALJ then found the objective medical evidence could "not be fully reconciled with the level of pain and limiting effects of the impairments that the claimant has alleged[]" and summarized Plaintiff's medical records and the State agency consultants' opinions. Tr. 21–22.

> The ALJ concluded:
>
> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms, limitations, and social functioning, which weakens the reliability of his allegations. . . . Medical evidence does not show recurrent exacerbations, hospitalizations, or intensive specialist treatment. The undersigned does note that findings have worsened, even though exams and signs remain fairly stable. The less than sedentary RFC addresses the claimant's allegations and the medical evidence.
>
> *Based on the entire record, including the testimony of the claimant*, the undersigned concludes that the evidence fails to support the claimant's assertions of total

> disability. Despite the evidence demonstrating that the claimant has suffered from a medically determinable "severe" impairment, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work. In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling limitations. The claimant does experience some levels of limitations but only to the extent described in the residual functional capacity above.

Tr. 22–23 (emphasis added).

As noted above, when considering the intensity and persistence of a claimant's symptoms and determining the extent to which a claimant's symptoms limit his capacity for work, the regulations provide that an ALJ will consider relevant factors such as a claimant's "daily activities." 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). However, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original). Merely listing a claimant's activities does not automatically equate to substantial evidence if those activities were "minimal daily activities"—such as cooking, driving, and household chores that caused the claimant great pain or required intermittent periods of rest—qualified by the claimant in ways that do not contradict claims of disabling symptoms. *See Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269–70 (4th Cir. 2017).

Plaintiff asserts the ALJ was "dismissive" of his hearing testimony. Pl.'s Br. 6–7. He contends that, although the ALJ accurately summarized his testimony, she then dismissed his allegations using information from his Function Report—that he is able to care for his pets, perform personal care, prepare his own meals, perform household chores, go out alone, shop in stores, handle his finances, and perform hobbies such as watching television and fishing—without considering other portions of the same report qualifying his ability to perform those activities. Pl.'s Br. 6–7. In particular, Plaintiff points to his assertions that he sometimes wakes up coughing, gets

short of breath while bathing, has meals prepared for him most of the time, requires more time to sweep and mop, and needs encouragement to do chores because of his lack of energy and shortness of breath. Pl.'s Br. 7 (citing Tr. 215–19).

It is not clear, nor does Plaintiff explain, how these additional qualifications would alter the ALJ's assessment. According to Plaintiff's own statements, when his mother lived with him, she would prepare his meals, but he was also capable of preparing his own meals. Tr. 216. And, while Plaintiff indicated in his May 14, 2019 Function Report that he woke up coughing "at times," Tr. 215, at a November 19, 2019 office visit he denied any cough or wheezing and his sleep study revealed only mild obstructive sleep apnea—not enough to meet the criteria for a CPAP machine. Tr. 881 (Progress Notes from Palmetto Pulmonary and Critical Care Associates).

Further, an ALJ's mere omission of qualifying language does not automatically necessitate remand. The ultimate inquiry is whether the ALJ's assessment is supported by substantial evidence, not only the claimant's ADLs. Here, the ALJ also considered the following evidence.

Regarding Plaintiff's epidermolysis bullosa, the ALJ noted "March 2017, December 2018, April 2019, and November 2019 notes show that he was stable on medications, tolerating well, with no side effects." Tr. 21 (citing Tr. 293, 420, 454, 879). Plaintiff does not appear to dispute this finding.

Regarding Plaintiff's pulmonary problems, the ALJ considered the following. In September 2018, a CT scan led to Plaintiff's emphysema diagnosis. Tr. 21 (citing Tr. 822). Plaintiff experienced chest pain in December 2018. Tr. 969. He was noted to have associated shortness of breath, deep breathing, and fatigue, but a normal cardiovascular and pulmonary exam. Tr. 969–70.

In January 2019, Plaintiff's emphysema worsened from mild to moderate. Tr. 21 (citing Tr. 417). Plaintiff's "[p]ulmonary function testing revealed normal spirometry and lung volumes,

but decreased diffusing capacity for carbon monoxide (DLCO) of 31." Tr. 21 (citing Tr. 945–46). A follow-up CT in February 2019 showed no "significant change" from January. Tr. 753–54. The ALJ referred to this CT scan as "stable." Tr. 21 (citing Tr. 753).

The ALJ found Plaintiff's condition was mostly unchanged for the remainder of 2019. *See* Tr. 21–22. Treatment notes from May indicate Plaintiff had normal respiratory effort with symmetrical lung expansion and minimally decreased, but clear breath sounds bilaterally. Tr. 21–22 (citing Tr. 460). A CT scan in August showed "stable emphysema changes." Tr. 698–700. In September, pulmonary function testing showed improved spirometry but reduced DLCO. Tr. 652–53. In October, Plaintiff complained of fatigue, cough, shortness of breath, and wheezing, but his examination showed normal effort and breath sounds and no accessory muscle usage, respiratory distress, wheezes, rhonchi, or rales. Tr. 950–53. As noted by the ALJ, Plaintiff's doctor indicated his chronic conditions, including his emphysema, were stable and Plaintiff was tolerating treatment without significant side effects. Tr. 22, 953. In November, Plaintiff denied cough or wheezing and endorsed mild dyspnea on exertion. Tr. 22, 881. Plaintiff was noted to have "ongoing emphysema changes" and he did not meet the criteria for a CPAP machine. Tr. 881.

As the ALJ noted, Plaintiff's condition worsened somewhat in January 2020. Tr. 22 ("The undersigned does note that findings have worsened . . . "). A CT scan showed no change in his pulmonary nodules, but diffuse advanced emphysema throughout Plaintiff's lungs. Tr. 680–81. However, treatment notes from January indicate Plaintiff was not experiencing shortness of breath, cough, or wheezing. Tr. 959.

The ALJ also considered the only medical opinions in the record, those of the State agency consultants. Tr. 22. At the initial level, the State agency consultant found Plaintiff did not suffer from a severe impairment. Tr. 62–63. At the reconsideration level, the State agency consultant

found Plaintiff capable of performing light work with some environmental limitations. Tr. 77–79. While the ALJ found these opinions persuasive, she also found "additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level; a different interpretation of the earlier records; and evidence in the form of testimony at the claimant's hearing, consistent with the medical evidence in the record, justifies a conclusion that the claimant's impairments are more severe than was concluded by the state non-examining doctor (Ex. 7F-15F)." Tr. 22.

Plaintiff argues the ALJ failed to consider the longitudinal record and supports his argument with various copied and pasted excerpts from the medical records.[4] Pl.'s Br. 8–11. Plaintiff does not, however, identify which of these excerpts the ALJ failed to consider or explain the relevance of that failure to the court's substantial evidence review. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quotation omitted). Here, the ALJ accurately summarized the entirety of Plaintiff's medical records and testimony and the relevant medical opinions, including evidence supportive of limitations.

Based on a thorough review of the record and applicable law, the undersigned finds the ALJ followed the required two-step process in evaluating Plaintiff's symptoms and identified evidence in the record to support her conclusion. Accordingly, the undersigned finds that the ALJ properly applied SSR 16-3p and her determination regarding Plaintiff's subjective statements is supported by substantial evidence.

---

[4] The court notes that in addition to the many and varied medical records cited by the ALJ, her Decision reflects that she considered and cited to many of the same records included in Plaintiff's chart. *See* Tr. 18 (citing to Exs. 2F/13-14, 8F/4), Tr. 21-22 (citing to Exs. 2F/5, 9; 4F/7; 6F/1; 7F/10; 8F/4; and 11F/2-4).

15

III.     Conclusion and Recommendation

The court's function is not to weigh evidence or substitute its judgment for that of the Commissioner but is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied). Based on the foregoing, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

April 5, 2022                                                                                          Kaymani D. West
Florence, South Carolina                                                                 United States Magistrate Judge